UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NORMA B. OWENS,

                Plaintiff,

v.

AUTOMOTIVE MACHINISTS PENSION TRUST, et al.,

                Defendants.

No. C06-943Z

ORDER

       This matter comes before the Court on a Motion for Summary Judgment by Defendant Automotive Machinist Pension Trust (the "Trust"), docket no. 15, and a Cross-Motion for Summary Judgment by Plaintiff Norma B. Owens, docket no. 18. The Court has considered the Motions filed, the Oppositions and Replies, and the supporting declarations and materials submitted by each party. The Court now being fully informed enters the following Order.

       The parties generally agree on the facts underlying this declaratory action. The Trust is a collectively bargained multi-employer pension plan covered by the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et. seq. ("ERISA"). See Def.'s Mot., docket no. 15, ex. B. The Plan provides that the Trust will pay benefits in accordance with any qualified domestic relations order ("QDRO"), and that benefits are not otherwise assignable. Id., ex.

ORDER -1-

B, § 8.07. Under the terms of the Plan, the Plan's Trustees have discretionary authority to interpret ambiguous provisions relevant to benefit claims. Id., ex. B, art. X.

Defendant Philip R. Owens, Sr. is a retired participant in the Trust and currently receives monthly retirement benefit payments from the Trust. The payments will continue for his lifetime. Id., ex. C (Stokes Decl.). Plaintiff Norma B. Owens and Philip R. Owens, Sr. were never legally married. Id., ex. C, (Stokes Decl. ¶ 3). Although never married, Norma Owens and Philip Owens, Sr. lived together in a quasi-marital relationship for over 30 years. Id., ex. D (Owens Decl. ¶ 1). They held themselves out to the community as married and had two children together. Id. Mr. Owens was the main income earner in the family and Ms. Owens took care of the children and home. Id., ex. D (Owens Decl. ¶ 2). According to Mr. Owens, "Ms. Owens contributed little or nothing in the way of finances to the household." Pl.'s Resp., docket no. 18, ex. C (Owens Decl. at 2). Ms. Owens was listed on joint tax returns as "wife and dependent," and in a life insurance application as wife and primary beneficiary. Def.'s Mot., docket no. 15, at ex. D (Owens Decl. ¶ 2). The parties agree that Mr. and Ms. Owens were never legally married. Id., ex. E, ¶ 3.4.

During the Owens' 30-year relationship they obtained numerous joint assets, and Mr. Owens acquired an interest in the retirement accounts now at issue. Id., ex. E, ¶¶ 3.6, 3.8. Upon separation, Ms. Owens sought an equitable distribution of assets. She filed a petition in state court on August 10, 2004. Id. The petition resulted in the issuance of an Order by the King County Superior Court, titled "Qualified Domestic Relations Order." Id., ex. F. The court considered the retirement benefits accrued by Mr. Owens under the Plan as part of the overall equitable division of property from the quasi-marital relationship. The Order provided that Plaintiff Norma Owens was entitled to "Fifty Percent (50.0%) of each of the Participant's monthly benefit payments from the [Automotive Machinists Pension] Plan" based on her "quasi-marital relationship" to the Participant, Mr. Owens. Id. The Order was entered on August 19, 2005. Id.

The Order was presented to the Trust administrator on August 24, 2005, who forwarded it to counsel for review. Id., ex. G. The Trust subsequently notified counsel for Plaintiff Norma Owens on October 10, 2005 that the "Qualified Domestic Relations Order" signed by Judge White was not, in fact, a QDRO qualified for payment under the terms of the plan or ERISA. The Trust advised Ms. Owens that it would not provide payment pursuant to the Order:

> It is [the Automotive Machinists Pension Plan's] understanding that Ms. Owens and Mr. Owens were never married. Therefore, it would not appear that the August 19, 2005 order relates to the provision of child support, alimony payments, or marital property rights, and it would not be qualified.

Id., ex. H. The Trust refused to consider Judge White's Order as "qualified" under the plan, and refused to pay Ms. Owens any portion of the retirement benefit. Plaintiff subsequently commenced this action seeking declaratory judgment that the Order entered by Judge White was a qualified domestic relations order under ERISA.

## DISCUSSION

The parties agree on the legal issue to be resolved by the Court:

> Can a "qualified domestic relations order" be issued in favor of a non-spouse in a state court action to divide property accumulated during a non-marital relationship?

See Defs.' Mot., docket no. 15, at 4. The parties agree that there are no disputed issues of material fact and that summary judgment is appropriate. Def.'s Mot., docket no. 15, at 5; Pl.'s Opp., docket no. 18, at 4. The parties apparently also agree that review of a plan administrator's conclusions regarding legal obligations under a QDRO "collapses, in practical terms, into a *de novo* review." See, e.g., Hamilton v. Washington State Plumbing & Pipefitting Industry Pension Plan, 433 F.3d 1091, 1102 (9th Cir. 2006).

State courts in family law cases may "create enforceable interests in the proceeds of an ERISA plan, so long as those interests [comply] with the QDRO provision[s]." Trustees of Directors Guild of America-Producer Pension Benefits Plans v. Tise, 234 F.3d 415, 420 (9th Cir. 2000). The parties disagree as to whether the Order signed by Judge White

ORDER  -3-

complies with the ERISA's QDRO requirements. Transfers by a state court which do not satisfy ERISA's QDRO requirements are preempted. The term "qualified domestic relations order" is defined by statute:

    (i)    the term "qualified domestic relations order" means a domestic relations order--

        (I)    which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and

        (II)    with respect to which the requirements of subparagraphs (C) and (D) are met, and

    (ii)    the term "domestic relations order" means any judgment, decree, or order (including approval of a property settlement agreement) which--

        (I)    relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and

        (II)    is made pursuant to a State domestic relations law (including a community property law).

See 29 U.S.C. § 1056(d)(3)(B).

**A.    Child Support, Alimony Payments, or Marital Property Rights**

The Trust contends that the Order signed by Judge White does not qualify as a QDRO under § 1056(d)(3)(B)(ii)(I) because it is not a "domestic relations order." The Trust argues that the Order is not a domestic relations order because it does not meet the statutory definition, i.e., it does not relate to the "provision of child support, alimony payments, or marital property rights . . ." 29 U.S.C. § 1056(d)(3)(B)(ii)(I). The Trust urges that "domestic relations orders" are limited by statute to three categories: child support, alimony payments, or marital property rights. The Trust concludes that the Order signed by Judge White does not relate to child support, alimony, or marital property rights because the Owens were never married, and therefore the Order is not a "qualified domestic relations order" under ERISA.

ORDER -4-

The Trust concedes that "marital property rights" is not defined by statute, and concludes that Judge White's Order cannot meet the definition for a qualified domestic relations order because it does not relate to marital property rights. The Trust argues that a "non-marital relationship cannot create 'marital property rights.'" See Defs.' Mot., docket no. 15, at 10. The parties do not cite a relevant definition for "marital property rights," and the Court has been unable to find case law on the question of whether a meretricious relationship (or common law marriage) may create the type of "marital property rights" contemplated by ERISA, where such rights may be contemplated by State law. The Ninth Circuit has provided guidance for the interpretation of ERISA's statutory provisions:

> when interpreting [ERISA], [a court's] task is to construe what Congress has enacted. [The analysis] begin[s], as always, with the language of the statute. When looking to the plain language of the statute, we do more than view the words or subsections in isolation. [Courts] derive meaning from context, and this requires reading the relevant statutory provisions as a whole.

Hamilton, 433 F.3d at 1098 (internal citations and quotations omitted).

The Trust contends that no statutory interpretation is necessary because the statute contemplates a transfer pursuant to a QDRO involving only child support, alimony payments, or marital property rights. Ms. Owens, on the other hand, urges that Washington courts have "defined marital property as property acquired during the relationship of a quasi-marital relationship." Pl.'s Resp., docket no. 18, at 7.

Unfortunately, Washington law does not provide so clear a definition of "marital property" with regard to a quasi-marital relationship. However, Plaintiff's resort to Washington law is not misplaced: in context, § 1056(d)(3)(B) requires that a qualified domestic relations order be "made pursuant to a State domestic relations law (including a community property law)." 29 U.S.C. § 1056(d)(3)(B)(ii)(II). Read together, the statute evidences Congressional intent to rely upon state domestic relations law. Congress did not intend to develop a new area of federal domestic relations law, or marital property rights, according to federal law or a federal interpretation of community property law: "the whole

ORDER -5-

subject of domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States." See Buechold v. Ortiz, 401 F.2d 371, 372 (9th Cir. 1968).

ERISA relies upon state domestic relations law, with specific reference to domestic relations orders entered by state courts pursuant to state law. Accordingly, state law is appropriately considered in determining whether a "quasi-marital relationship" and the resulting division of assets may give rise to a "marital property right" under ERISA. Washington courts address quasi-marital relationships (i.e., meretricious relationships) with consideration given to community property law by analogy. Connell v. Francisco, 898 P.2d 831, 835 (Wash. 1995). In practical terms, the result is the extension of community property laws to those in quasi-marital relationships. Connell is also instructive on the question of property division pursuant to State community property laws, and also notes the limits of a quasi-marital relationship under Washington law:

> Until the Legislature, as a matter of public policy, concludes meretricious relationships are the legal equivalent to marriages, we limit the distribution of property following a meretricious relationship to property that would have been characterized as community property had the parties been married. This will allow the trial court to justly divide property the couple has earned during the relationship through their efforts without creating a common law marriage or making a decision for a couple which they have declined to make for themselves.

Id. at 835-36. The limits of a quasi-marital relationship in Washington, however, are not evident in the division of property: "property that would have been characterized as community property had the couple been married is before the trial court for a just and equitable distribution." Id. at 837.

Washington has chosen to partially recognize quasi-marital relationships for purposes of property division, and the Court concludes that domestic relations orders relating to quasi-marital relationships are cognizable under ERISA.

> Support obligations, in particular, are "deeply rooted moral responsibilities" that Congress is unlikely to have intended to intrude upon. In accord with

ORDER -6-

> these principles, Congress ensured that state domestic relations orders, as long as they meet certain statutory requirements, are not pre-empted.

Boggs v. Boggs, 520 U.S. 833, 848 (1997). The domestic relations order at issue in this case, entered in favor of the putative spouse after a 30-year quasi-marital relationship, is not excluded by § 1056(d)(3)(B)(ii)(I). The quasi-marital community property rights identified in the state domestic relations order qualify as "marital property rights" under ERISA.[1]

**B.     Eligibility as an Alternate Payee**

The Trust also contends that Ms. Owens is also ineligible to receive benefits because she is not qualified as an "alternate payee" under 29 U.S.C. § 1056(d)(3)(K). An "alternate payee" is defined by statute as follows:

> The term "alternate payee" means any spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant.

29 U.S.C. § 1056(d)(3)(K). The Trust argues that Ms. Owens does not qualify as an "alternate payee" because she is not a spouse, former spouse, child, or other dependent of Mr. Owens. Plaintiff claims she is a qualified "alternate payee" because she qualifies as a dependent of Mr. Owens.

It is essentially undisputed that for the term of their quasi-marital relationship, Ms. Owens contributed little financially to the Owens' relationship, was primarily responsible for taking care of the couple's children and home, and was financially dependent on Mr. Owens.

---

[1] In Reply the Trust asserts a new argument. The Trust urges that the Federal Defense of Marriage Act, 1 U.S.C. § 7, compels a different result because it defines "marriage" as "only a legal union between one man and one woman as husband and wife." The Trust urges that because the Act defines "marriage," the Court should reference that definition in evaluating whether Ms. Owens had a "marital property right" interest in Mr. Owens benefits. However, to the extent Washington has chosen to recognize "quasi-marital" relationships in determining property rights after an extended putative marriage, the Court finds that the Defense of Marriage Act is not dispositive with regard to Ms. Owens entitlement to benefits under the Plan. The definitions provided by the Act do not address whether a domestic relations order following a quasi-marital relationship is a qualified domestic relations order under ERISA, or whether "quasi-marital" property rights under state law fall within "marital property rights" as the term is used in ERISA.

ORDER   -7-

See Pl.'s Resp., docket no. 18, ex. C (Owens Decl. at 2).  Both parties urge that Ms. Owens' status as a dependent may be determined by reference to Internal Revenue Code § 152.  See 26 U.S.C. § 152.  However, the parties do not seriously dispute that Ms. Owens was dependent on Mr. Owens for financial support during the period of their 30-year relationship.  Mr. Owens was the primary wage earner, and Ms. Owens took care of home and children during the period of their relationship.  See Defs.' Mot., docket no. 15, ex. D (Owens Decl. ¶ 2).  The Trust argues that "plaintiff would also have to prove, based on the administrative record, that she *is or was* a 'spouse, former spouse, child or other dependent' of the participant."  See Defs.' Reply, docket no. 19, at 3 (emphasis added).  However, Ms. Owens dependent status for the Owens' 30-year quasi-marital relationship is undisputed.

The Trust's argument that Ms. Owens' dependent status should be evaluated at a time after she split from Mr. Owens is unavailing.  Such an approach would necessarily avoid a finding of dependency in every case merely by postponing the dependent's evaluation until the period of dependence had ended.  Similarly, the Trust's alleged reliance on the use of the word "partner" in Judge White's Order is unpersuasive because the Trust has chosen to ignore the import of the remainder of the Order and to deny Ms. Owens the payment of benefits.  In addition, the word "partner" is not suggestive or dispositive with regard to Ms. Owens' dependent status.

Ms. Owens' dependent status is undisputed for the 30-year term of her quasi-marital relationship with Mr. Owens; no facts in the record indicate otherwise.  The Court therefore concludes that Ms. Owens qualifies under § 1056(d)(3)(K) as an other dependent recognized by a domestic relations order as having a right to receive a portion of benefits payable under the Plan, and is qualified as an alternate payee.

## CONCLUSION

The Defendant's Motion for Summary Judgment, docket no. 15, is DENIED.  The Plaintiff's Cross-Motion for Summary Judgment, docket no. 18, is GRANTED.  The Order

ORDER   -8-

signed by Judge White is a qualified domestic relations order under 29 U.S.C. § 1056(d)(3)(B) and Ms. Owens is qualified as an alternate payee under § 1056(d)(3)(K).

IT IS SO ORDERED.

DATED this 19th day of January, 2007.

/s/ Thomas S. Zilly
Thomas S. Zilly
United States District Judge